UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIM. NO. 5:13-CR-68 (MTT) |
| vs. | : | |
| | : | |
| BIO-TECH MANAGEMENT, INC. | : | Filed at 3:21 P.M. 3/14 20 14 |
| dba Bio-Tech Systems | : | |
| | : | Deputy Clerk, U.S. District Court Middle District of Georgia |

### PLEA AGREEMENT

It is agreed by the United States of America, by and through its undersigned attorney, and BIO-TECH MANAGEMENT, INC., through its president, owner and agent, Steven A. Murray, hereinafter referred to as "Defendant," and Defendant's undersigned attorney, as follows:

(1)

Defendant acknowledges that Defendant has reviewed and discussed the Indictment against Defendant in this matter with Defendant's attorney, and Defendant's attorney has explained to Defendant his understanding of the Government's evidence.

(2)

Defendant understands that Defendant is not required to plead guilty, and that Defendant has the right to plead not guilty and to elect instead to be tried by jury. Defendant understands that at a jury trial, Defendant would enjoy a presumption of innocence, and that the United States would have the burden of proving Defendant's guilt beyond a reasonable doubt. Defendant understands that Defendant would be entitled to the services of an attorney at all stages of such a trial. Defendant understands that Defendant would be entitled to confront and to cross-examine the United States' proof, and to present witnesses and evidence in Defendant's own behalf. Defendant understands that Defendant would have the right to testify in Defendant's own behalf,



1

but that Defendant could not be compelled to do so. Defendant has discussed these rights with Defendant's attorney. Defendant is satisfied with the services of Defendant's attorney. Defendant knowingly and voluntarily waives Defendant's right to plead not guilty and to proceed to trial.

The United States Department of Justice and the Defendant, understand and agree that the Court should consider its sentence in light of the advisory Federal Sentencing Guidelines, as explained in United States v. Booker, 543 U.S. 220 (2005). Defendant knowingly and voluntarily waives any further objections that Defendant may have based on Booker, Apprendi v. New Jersey, 530 U.S. 466 (2000), and their progeny. Defendant, therefore, agrees that at sentencing the Court may determine any pertinent fact by a preponderance of the evidence, and the Court may consider any reliable information, including hearsay. Defendant expressly waives any claim of right to an indictment, trial by jury, and/or proof beyond a reasonable doubt on any factual determinations that pertain to sentencing in this case.

(3)

Defendant, being fully cognizant of Defendant's rights, and in exchange for the considerations to be made by the United States as set forth in Paragraph (4) below, agrees pursuant to Rule 11(c), Federal Rules of Criminal Procedure, as follows:

(A)   The Defendant is guilty and will knowingly and voluntarily enter a plea of guilty to: Count One of the Indictment which charges Defendant with Conspiracy to Falsify Records (18 U.S.C. 1519), Make and Use False Statements (18 U.S.C. 1001), Unlawfully Use a Registered Pesticide (7 U.S.C. 136j) and to defraud an agency of the United States by impairing, impeding and interfering with a lawful government function of the U.S. Environmental Protection Agency (Klein) in violation of 18 U.S.C. 371; Counts Three, Five, and Ten which



charge Defendant with the Making and Using of a False Statements in violation of 18 U.S.C. 1001; Counts Thirty-Five and Thirty-Six which charge the Defendant with Mail Fraud, in violation of 18 U.S.C. 1341 and; Counts Forty-Three through Fifty-Two, which charge the Defendant with Unlawful Use of a Registered Pesticide, in violation of 7 U.S.C. 136j.

(B) That Defendant fully understands that Defendant's plea of guilty as set forth in Subparagraph (A), above, to Counts One, Three, Five, Ten, Thirty-Five and Thirty-Six will subject it to a maximum sentence of five (5) years probation, a maximum fine of $500,000.00, or both, per count. Defendant further acknowledges that the Court is required to impose a mandatory assessment of $400.00 for each of these felony counts. The Defendant fully understands that the Defendant's plea of guilty as set forth in Subparagraph (A), above to Counts Forty-Three through Fifty-Two will subject it to a maximum sentence of five (5) years probation, a maximum fine of $10,000.00, or both, per count and that the Court is required to impose a mandatory assessment of $25 per misdemeanor count.

(C) The Defendant acknowledges and understands that the Court is not bound by any estimate of the probable sentencing range that Defendant may have received from Defendant's attorney, the Government, or the Probation Office. The Defendant further acknowledges and agrees that Defendant will not be allowed to withdraw Defendant's plea because Defendant has received an estimated guideline range from the Government, Defendant's attorney, or the Probation Office which is different from the guideline range computed by the Probation Office in the Presentence Investigative Report and found by the Court to be the correct guideline range.



(D) The Defendant understands fully and has discussed with Defendant's attorney that the Court will not be able to determine the appropriate guideline sentence until after a Presentence Investigative Report has been completed. The Defendant understands and has

3

discussed with Defendant's attorney that the Defendant will have the opportunity to review the Presentence Investigative Report and challenge any facts reported therein. The Defendant understands and has discussed with Defendant's attorney that any objections or challenges by the Defendant or Defendant's attorney to the Presentence Investigative Report or the Court's rulings thereon will not be grounds for withdrawal of the plea of guilty.

(E)   Defendant understands and has discussed with Defendant's attorney that after the Court determines the applicable guideline range of this case, the Court has the authority under certain circumstances to impose a sentence that is more severe or less severe than the sentence called for by the guidelines.

(F)   Defendant agrees to provide a check for the mandatory assessment at the time of sentencing.

(G)   Defendant understands and has fully discussed with Defendant's attorney, that the Court may order restitution in this case pursuant to 18 U.S.C. § 3663A and that Defendant agrees to pay the restitution ordered by the Court whether to an identifiable victim or the community.

(H)   Defendant understands that ordinarily Title 18, United States Code, Section 3742, will, in certain cases, allow for a direct appeal after sentencing followed by the Court of Appeals' limited review of a Defendant's sentence. But once this agreement is accepted and sentence is imposed by the District Court, Defendant by this agreement forever waives any right to an appeal or other collateral review of Defendant's sentence in any court. However, in the event that the District Court imposes a sentence that exceeds the advisory guideline range, then the Defendant shall retain only the right to pursue a timely appeal directly to the Court of Appeals after the District Court imposes its sentence. In the event that the Defendant retains the right to a direct appeal, that right is limited to appealing sentencing issues only.

Defendant and the Government agree that nothing in this plea agreement shall affect the Government's right or obligation to appeal as set forth in Title 18, United States Code, Section 3742(b). If, however, the Department of Justice appeals the Defendant's sentence pursuant to this statute, the Defendant is released from Defendant's waiver of Defendant's right to appeal altogether.

(I)     Defendant and the Government stipulate and agree that there was no detected or identified biological evidence obtained during the investigation and prosecution of the matter which is subject to DNA testing. The Defendant further agrees that all evidence obtained in this investigation and prosecution may be destroyed or returned to its rightful owner.

The United States of America and Defendant hereby agree that any breach of this agreement by the Defendant occasioned by a failure to cooperate, by withholding information, giving of false information, perjury, or failure to testify in any judicial proceeding in connection with the individuals, matters, and transactions referred to in the Indictment, would: (a) not relieve the Defendant of Defendant's plea of guilty; (b) permit the Government to reinstate and proceed with prosecution on any other charges arising from the matters referred to in this Indictment; (c) permit the Government to instigate and proceed with the prosecution of any other offenses arising from a breach of this agreement, including perjury, false declaration, false statement, and/or obstruction of justice; and (d) permit the Government to utilize against the Defendant in any subsequent judicial proceeding any and all statements made by the Defendant.  If a legitimate issue arises as to whether or not there has been a breach of this agreement, said question shall be determined by the United States District Court for the Middle District of Georgia. The burden of establishing such a breach shall be upon the United States and shall be established by a preponderance of the evidence. The Federal Rules of Evidence shall not apply

in any hearing to establish such a breach, but evidence shall be admitted and excluded at the Court's discretion.

(4)

In exchange for the consideration set forth in Paragraph (3) above, the United States Government agrees as follows:

(A)     That the Government will accept the plea of guilty by Defendant as provided in Paragraph (3)(A), above, in full satisfaction of all possible federal criminal charges, known to the United States at the time of Defendant's guilty plea, which might have been brought solely in the Middle District of Georgia against the Defendant. The United States agrees to dismiss the remaining counts of the pending Indictment, if any, in exchange for Defendant's plea of guilty to Counts One, Three, Five, Ten, Thirty-Five, Thirty-Six and Forty-Three through Fifty-Two of the Indictment.

(B)     If the Defendant affirmatively manifests an acceptance of responsibility as contemplated by the Federal Sentencing Guidelines, the United States Department of Justice will recommend to the Court that the Defendant receive an appropriate downward departure for such acceptance. It is entirely within the Court's discretion whether or not the Defendant would be entitled to any reduction based upon an acceptance of responsibility. The United States expressly reserves its right to furnish to the Court information, if any, showing that the Defendant has not accepted responsibility, including, but not limited to, denying his involvement, giving conflicting statements as to his involvement, or engaging in additional criminal conduct including personal use of a controlled substance.

(5)

Nothing herein limits the sentencing discretion of the Court.

(6)

This agreement constitutes the entire agreement between the Defendant and the United States, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States, including any Assistant United States Attorney or Department of Justice Trial Attorney, concerning any plea to be entered in this case. In addition, Defendant states, through its agents, that no person has, directly or indirectly, threatened or coerced Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

(7)

As an aid to this Court, the United States Department of Justice and the Defendant enter into the following Stipulation of Fact. This stipulation is entered into in good faith with all parties understanding that the stipulation is not binding on the Court. Under U.S.S.G. Policy Statement Section 6B1.4(d), this Court may accept this stipulation as written or in its discretion with the aid of the Presentence Investigative Report determine the facts relevant to sentencing.

Subject to the above paragraph, the United States Department of Justice and the Defendant stipulate and agree that the Government could prove the following beyond a reasonable doubt:

The Federal Insecticide, Fungicide and Rodenticide Act (FIFRA) is administered and enforced by the United States Environmental Protection Agency (U.S. EPA), a federal executive agency. It is a violation of FIFRA to use a registered pesticide in a manner inconsistent with its label. The U.S. EPA has jurisdiction and authority to investigate and take legal enforcement action for violations of FIFRA.

Termidor SC (Termidor) is a pesticide registered under FIFRA with the U.S. EPA, registration No. 7969-210. According to the directions on the Termidor product label, filed with the U.S. EPA, the pesticide is not permitted to be applied indoors except as a foam in wall voids. The label further prohibits the use of Termidor more than twice in a year.

Defendant Bio-Tech Management, Inc, (Bio-Tech), is a pest control services company. Co-defendant Steven A. Murray is the owner and president of Bio-Tech. Bio-Tech's clients were nursing homes. Bio-Tech serviced client nursing homes in six states, Georgia, South Carolina, North Carolina, Alabama, Florida and Tennessee. Bio-Tech employed between 12-15 pesticide applicators at a time. Co-defendant Murray managed the daily affairs of the company to include assigning nursing homes to individual employee applicators, accounts receivable, accounts payable, purchases of pesticide products, paying employee wages and collecting and maintaining service records documenting the pesticides used by Bio-Tech employees at client nursing homes. As the sole certified applicator, co-defendant Murray was also the technical advisor to Bio-Tech's employee applicators in the field. If an employee applicator had a question regarding what pesticides to apply or how to apply them, they would call Murray. Co-defendant Murray had been certified in the State of Alabama as a Structural Pest Control operator since 1989. However, neither co-defendant Murray, nor any other Bio-Tech employee was ever certified as an operator to apply pesticides to wood destroying organisms, such as termites, in any state. 

Many of Bio-Tech's client nursing homes were managed by one of two companies: UHS-Pruitt, Inc. or Ethica, Health and Retirement Communities, LLC both with headquarters in Georgia. Bio-Tech representatives signed contracts with these management companies to

provide pest control service on a monthly basis. In the contract, Bio-Tech promised to apply pesticides in accordance with the label instructions and federal, state and local law.

Pursuant to the contract, Bio-Tech billed the individual client nursing home for pest control services by sending an invoice in the beginning of each month by U.S. Mail. Later in the month, the Bio-Tech technician would visit the client nursing home and apply pesticides. After applying the pesticides at the nursing home, the technician would complete a service report. This service report recorded the name and address of the nursing home serviced, the pesticides that were applied, the percentage of the active ingredient in the pesticide applied, the location inside or outside the nursing home where pesticides were applied, the date of application and the signature of the Bio-Tech technician who applied the pesticides. After completing the service report, the technician left the bottom copy (yellow) with the nursing home administrator. The technician would retain the top copy (white) of the service report for Bio-Tech's records. In compliance with Bio-Tech policy, each technician would periodically send his copies of the completed service reports to co-defendant Murray by facsimile, U.S. Mail or common carrier. These service records were required to be maintained for at least 2 years under state law. After a nursing home was serviced and pesticides were applied, the Bio-Tech invoice was paid by the nursing home or its management company by check which was sent to Bio-Tech through the U.S. Mail. Unbeknown to either the nursing homes or the two management companies, Bio-Tech technicians applied registered pesticides, including Termidor, unlawfully in violation of the contracts with both UHS-Pruitt and Ethica.



## CONSPIRACY

Beginning no later than October 2005, and continuing through August 2010, in the Middle District of Georgia and elsewhere, the Defendant Bio-Tech conspired with its President and owner, co-defendant Steven A. Murray, and with several of its employees to repeatedly apply the registered pesticide Termidor in a manner inconsistent with its label instructions; to repeatedly make and use false service reports to conceal these unlawful applications of the pesticide; and, after the Georgia Department of Agriculture (GDA) began an investigation into Bio-Tech's misuse of multiple different registered pesticides, conspired to alter hundreds of service reports with the intent to obstruct that investigation as well as the proper administration of FIFRA. Specifically, co-defendant Murray directed three of the co-conspirator employees to alter the service reports to make it look as though Termidor was not applied or was otherwise applied in compliance with FIFRA. At co-defendant Murray's explicit direction, three Bio-Tech employee co-conspirators traveled to each of their respective client nursing homes, and altered, falsified and made false entry in service reports going back at least two years, resulting in hundreds of service reports being corrupted. These alterations were performed for the express purpose of impeding the investigation of the GDA into defendant Bio-Tech's repeated unlawful use of registered pesticides in nursing homes. In furtherance of this scheme and the conspiracy, co-defendant Murray collected and submitted many of the falsified service reports to the GDA in response to that agency's official request for records of pesticide applications in nursing homes within their respective state. These falsified service reports were forwarded to the U.S. EPA to make a determination as to whether or not to pursue a federal enforcement action against Steve Murray and Bio-Tech for the unlawful use of various different registered pesticides. Neither the



GDA nor the U.S. EPA regulators detected the falsifications which concealed the unlawful use of Termidor.

### False Statements

Beginning no later than October 2005, in the Middle District of Georgia and elsewhere, the Defendant Bio-Tech through its agent, and co-conspirator, Steven A. Murray, instructed four of its employees (MM, BW, JC, KW), to make and use false documents by directing them to write the term "Cy-Kick T" on the company service report when they used the pesticide Termidor. These documents were falsified in this manner for the express purpose of concealing Bio-Tech's unlawful use of Termidor from state regulators and nursing home staff. At co-defendant Murray's direction, these four individual Bio-Tech applicators falsified hundreds of service reports at hundreds of nursing homes for almost five years. In response to GDA's official request for records of pesticide application, co-defendant Murray personally delivered service reports to the state agency that he and Bio-Tech knew to be falsified in a manner to conceal Bio-Tech's unlawful use of Termidor. These falsified service reports were subsequently forwarded to the U.S. EPA for a determination regarding appropriate federal enforcement action. Neither the state agency, nor the U.S. EPA regulators detected the falsification of the service reports which concealed the unlawful use of Termidor.

### Unlawful Use of Pesticides

Termidor is a registered pesticide with the U.S. EPA under FIFRA. FIFRA prohibits the use of any registered pesticide in a manner inconsistent with its label. The Termidor label prohibits the use of this pesticide indoors except as a foam application in wall voids. The label further prohibits the use of the pesticide, inside or outdoors, more than twice per year. From no

later than October 2005 until June 2009, five of Defendant's employees, at co-defendant Murray's direction, and with the Defendant's full knowledge, repeatedly applied Termidor in a manner inconsistent with its label by applying it in indoors in hundreds of Georgia nursing homes within a year. These unlawful applications were intentionally concealed from nursing home administrators and state regulators through the falsification of service reports by Bio-Tech technicians in accordance with co-defendant Murray's direction and scheme. The Bio-Tech technicians sent all these falsified service reports to Murray, who kept and maintained them pursuant to state law.

(8)

## ACCEPTANCE OF PLEA AGREEMENT

Defendant, through its agent, understands and has fully discussed with Defendant's attorney that this agreement shall become effective only upon the Court's acceptance of this agreement and the Court's acceptance of the plea of guilty by the Defendant.

SO AGREED, this 14th day of March, 2014.

ROBERT G. DREHER
ACTING ASISTANT ATTORNEY GENERAL
ENVIRONMNET AND NATURAL
RESOURCES DIVISION
U.S. DEPARTMENT OF JUSTICE

BY: _____
Richard J. Powers
Trial Attorney
Environmental Crimes Section

I, STEVEN A. MURRAY, President, owner and agent of Defendant BIO-TECH MANAGEMENT, INC. have read this agreement and had this agreement read to me by my attorneys, James Sturdivant and Floyd Buford. I have discussed this agreement with my attorneys, and I fully understand it and agree to its terms.

_____
STEVEN A. MURRAY for
BIO-TECH MANAGEMENT, INC.
DEFENDANT

I, James Sturdivant, attorney for Defendant BIO-TECH MANAGEMENT INC., have explained the Indictment and the Government's evidence received through discovery and my investigation of the charges to Defendant. I believe Defendant understands the charges against Defendant and the evidence that would be presented against Defendant at a trial. I have read this agreement, have been given a copy of it for my file, and have explained it to Defendant. To the best of my knowledge and belief, Defendant understands this agreement.

_____
JAMES STURDIVANT
ATTORNEY FOR DEFENDANT